# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**MARK BARKER**
**ADC #139988**                                                                                                     **PLAINTIFF**

**V.**                       **NO. 2:24-cv-00085-JM-ERE**

**MORIEON KELLY**, *et al.*                                                   **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.**      **Procedures for Filing Objections:**

This Recommendation has been sent to United States District Judge James M. Moody Jr. Any party may file objections if they disagree with the findings or conclusions set out in the Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record.

**II.**      **Background:**

On April 29, 2024, *pro se* plaintiff Mark Barker, an Arkansas Division of Correction ("ADC") inmate, filed this civil rights lawsuit under 42 U.S.C. § 1983. *Doc 2*. Mr. Barker alleges that: (1) on November 16, 2023, Defendants J. King and Scott Taylor were aware that he had been assigned to a cell with an active water

sprinkler; (2) several hours later, Defendant Taylor forced him to stand naked, handcuffed in a "cage" for eight hours, then twisted his right wrist causing injury; (3) early the next morning, Defendants D. Mitchell and Morieon Kelly used excessive force against him; and (4) Defendants Mitchell and Kelly were deliberately indifferent to his medical needs following the incident. Mr. Barker sues each Defendant in both his or her individual and official capacity seeking monetary damages and injunctive relief.

Mr. Barker is currently proceeding on: (1) an Eighth Amendment unconstitutional conditions of confinement claim against Defendant Taylor; (2) excessive force claims against Defendants Taylor, Mitchell, and Kelly; and (3) medical deliberate indifference claims against Defendants Mitchell and Kelly. The Court previously: (1) dismissed Mr. Barker's unconstitutional conditions of confinement claim against Defendants Taylor and King regarding his assignment to a cell with an active sprinkler; and (2) terminated J. King as a party Defendant. *Doc. 20*.

Defendants Kelly, Mitchell, and Taylor have filed a motion for summary judgment, brief in support, and statement of facts, arguing that Mr. Barker failed to exhaust his administrative remedies as to his claims against them. *Docs.38. 39. 40.* Mr. Barker has not responded to Defendants' motion and the time for doing so has passed. *Doc. 41*. The motion is now ripe for review.

For the reasons stated below, Defendants' motion for summary judgment (D*oc. 38*) should be GRANTED.

## III. Discussion:

### A. The PLRA Makes Exhaustion Mandatory

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted before filing a civil lawsuit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). To resolve the exhaustion question, the Court must determine: (1) what administrative remedies the ADC made available to inmates to bring and resolve claims; and (2) whether Mr. Barker fully and properly complied with available administrative remedies.

### B.     The ADC Grievance Procedure

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 19-34. *Doc. 40-1*. The written policy advises inmates they must exhaust their administrative remedies at all levels before filing a § 1983 lawsuit. *Id. at 19*.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen calendar days of the incident; (2) a "Step Two" formal unit-level grievance raising the claim with the Warden within three business days of the denial of the informal resolution; and (3) an appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision. *Id. at 6-14*. The grievance process ends when the appropriate Chief Deputy/Deputy/Assistant Director renders a written decision or rejects the appeal. *Id. at 14*.

To complete the exhaustion process before bringing this lawsuit, Mr. Barker was required to present his claim against all Defendants in a timely filed grievance and pursue all three steps of the ADC's grievance process until he received a decision on the merits at the final stage. See *Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)") (emphasis

in original); *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (a prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits.").

### C. Mr. Barker's Grievance History

Defendants submit the declaration of ADC Inmate Grievance Supervisor Terri Grigsby Brown in support of their motion. *Doc. 40-2*. Ms. Grigsby Brown states that she reviewed Mr. Barker's grievance history and found one grievance that Mr. Barker fully exhausted during the time period relevant to this lawsuit – EAM-23-2206. *Doc. 40-2 at 5*.

On December 10, 2023, Mr. Barker submitted grievance EAM-23-2206, alleging that a threat had been placed on his life, which he had reported to Corporal Hunt and Sergeant Liu (non-parties). Mr. Barker requested placement in protective custody and a transfer to another facility. *Id. at 8*.

The matters alleged and grieved in grievance EAM-23-2206 are not related to the claims raised in this lawsuit. As a result, although Mr. Barker fully pursued grievance EAM-23-2206 through each step of the grievance process, he did not thereby exhaust his administrative remedies as to his pending claims against Defendants Kelly, Mitchell, and Taylor.

On this record, there is no genuine issue of material fact on the threshold question of whether Mr. Barker fully exhausted his pending claims by asserting them

in the ADC's grievance process and fully exhausting all available remedies against Defendants Kelly, Mitchell, and Taylor before bringing this lawsuit. As a result, Defendants are entitled to judgment as a matter of law.

## IV.   Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1.   Defendants' motion for summary judgment (*Doc. 38*) be GRANTED.

2.   Mr. Barker's claims be DISMISSED, without prejudice, for failure to exhaust administrative remedies.

3.   The Clerk be instructed to close this case.

DATED 4 December 2024.

_____
UNITED STATES MAGISTRATE JUDGE